STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-470

MARY FISHER, ET AL.

VERSUS

THE TOWN OF BOYCE, ET AL.

**********

SUPERVISORY WRIT FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 255,497
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

WRIT GRANTED IN PART AND MADE PEREMPTORY;
WRIT DENIED IN PART. STAY RECALLED.

Gremillion, J., concurs in the result and assigns written reasons.

**Randall B. Keiser**
**Jeremy C. Cedars**
**Keiser Law Firm, P.L.C.**
**P. O. Box 12358**
**Alexandria, LA 71315**
**(318) 443-6168**
**COUNSEL FOR DEFENDANTS/APPLICANTS:**
    **Mayor Alma Moore**
    **Town of Boyce**

**Bradley C. Myers**
**Amanda M. Collura-Day**
**Kean Miller LLP**
**Post Office Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR AMICUS CURIAE LOUISIANA:**
    **Municipal Association Louisiana**

**SAUNDERS, Judge.**

Defendants-Relators, the Town of Boyce and Mayor Alma Moore, seek supervisory writ from the judgment of the Ninth Judicial District Court, Parish of Rapides, the Honorable Greg Beard, presiding, which granted in part and denied in part Relators' motion for protective order.

This matter arises out of a suit for the alleged improper termination of plaintiffs, Mary Fisher and Robert Hamilton, from their employment with the Town of Boyce, by the unilateral actions of Mayor Moore taken "without obtaining the recommendation or consent of Police Chief Eddie Washington or the action of the Board of Aldermen for the Town of Boyce." Police Chief Washington has since intervened and asserted plaintiffs' rights. In response, Relators filed a motion for summary judgment, asserting plaintiffs could not be improperly terminated, as they had not been properly hired. As part of their opposition thereto, plaintiffs' counsel, Daniel Broussard, obtained and filed the affidavit of Leonard Ray Lacour, a member of the Boyce Town Council.[1] Prior to obtaining the affidavit, the Town Council had met in executive session twice to discuss this litigation, and Relators' counsel had also discussed the matter with Lacour. Relators, therefore, alleged the communication between Lacour and plaintiffs' counsel violated Rule 4.2 of the Louisiana Rules of Professional Conduct (Rule 4.2)[2] because it was made outside

---

[1] Relators explained that, for the purposes of this writ, the terms "Town Council" and "Board of Aldermen" are used interchangeably.

[2] Rule 4.2 provides:

> Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:
> (a) a person the lawyer knows to be represented by another lawyer in the matter; or
> (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and

the presence and without the consent of defense counsel. The trial court struck the affidavit from the summary judgment proceedings and denied summary judgment, but declined to exclude Lacour's testimony at trial. Relators filed a motion for protective order, requesting the trial court (1) preclude plaintiffs, their attorney, and/or agents from meeting with any town official wherein the subject matter of this litigation is discussed, and (2) exclude Lacour's affidavit and testimony/evidence. *See* Application, p. 34. Plaintiffs opposed the motion, arguing that Fisher, a "constituent," had a right to talk to Lacour, but did not file their own motion for protective order.

The trial court denied the motion in part "insofar as it seeks to exclude Ray Lacour as a witness" and granted the motion in part, ordering: (1) defense counsel may communicate with Mayor Moore; (2) plaintiffs' counsel may communicate directly with Police Chief Washington, "as he was and, depending upon the ruling of the Third Circuit, may be a plaintiff in this matter"; but (3) neither counsel for plaintiffs nor defendants "shall have further direct contact with any Alderman of the Town of Boyce, or any other Town of Boyce employee with managerial authority." *See* Application, p. 85. Relators now seek review of the trial court's ruling, particularly as to its refusal to exclude Lacour as a witness and its prohibiting defense counsel from communicating with the Town Council.

We find that this suit involves the *res nova* issue of whether Louisiana law requires exclusion of evidence and testimony from an officer of a represented

(1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;

(2) who has the authority to obligate the organization with respect to the matter; or

(3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

organization who was improperly contacted by opposing counsel in violation of Rule 4.2. On June 26, 2017, this court stayed the August 27, 2017 bench trial and ordered additional briefing. Plaintiffs failed to file any opposition brief in this court.

## SUPERVISORY RELIEF

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. But see La.Code Civ.P. art. 2083, comment (b), "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." (Citation omitted.) A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. When the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Herlitz Const. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So.2d 878 (La.1981) (per curiam).

## ON THE MERITS

Pursuant to the general rules of discovery, a court has the authority to grant a protective order "for good cause shown" if justice requires such an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." La.Code Civ.P. art. 1426. The granting or denial of a protective order and the extent of protection are within the sound discretion of the

trial court. *Boyd v. St. Paul Fire & Marine Ins. Co.*, 99-1820 (La.App. 3 Cir. 12/20/00), 775 So.2d 649, *writ denied*, 01-220 (La. 3/23/01), 788 So.2d 430. An appellate court will not modify or reverse the trial court in such matters absent a showing of abuse of discretion. *Doucet v. Crowley Mfg.*, 02-1065 (La.App. 3 Cir. 3/19/03), 846 So.2d 875. Similarly, the trial court has vast discretion in determining whether to exclude or allow evidence, and its decisions will not be overturned in the absence of an abuse of discretion. *Bellsouth Telecomms., Inc. v. City of Lafayette*, 05-1478, 05-1505 (La.App. 3 Cir. 1/5/06), 919 So.2d 844.

The primary basis for Relators' request for such an order, as well as its arguments to this court, is that plaintiffs' counsel, in violation of Rule 4.2, communicated with Lacour, an officer of a represented organization, outside the presence and without consent of opposing counsel. Relators posit that the penalty for such communication should be the exclusion of Lacour's testimony in its entirety at trial and, therefore, the trial court erred in failing to exclude Lacour's testimony. Citing the provisions of Rule 4.2, Relators assert the communication between plaintiffs' counsel and Lacour about the subject of this litigation was prohibited because: (1) Lacour, as Alderman, is by definition an "officer" of the Town, which is a defendant in this suit and which Broussard knew was represented by counsel, La.R.S. 33:381,[3] *see* Rule 4.2(b)("person the lawyer knows is presently . . . officer . . . of a represented organization"); (2) defense counsel discussed the litigation with Lacour prior to the communication, *see* Rule 4.2(b)(1)("who . . . consults with the organization's lawyer concerning the matter"); (3) the Town

---

[3] La.R.S. 33:381(A) provides: "The officers of every municipality shall be a mayor, aldermen, a chief of police, a tax collector, and a clerk." Relators also cite Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct that explicitly prohibits an attorney from communicating with an "entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

4

Council met in executive session twice, with Lacour present, to determine what direction to proceed in this litigation prior to the contact, *see* Rule 4.2(b)(2)("who has the authority to obligate the organization with respect to the matter"); and (4) plaintiffs have placed the Town Council's alleged inactions regarding plaintiffs' hiring and termination front and center in this litigation as a basis for their suit, *see* Rule 4.2(b)(3)("whose . . . omission in connection with the matter may be imputed to the organization for purposes of civil . . . liability").

Relators also advance the dual purposes of Rule 4.2 to prevent disclosure of attorney/client communications and to protect a party from "liability-creating statements" elicited by a skilled interrogator.[4] In the interest of furthering same, Relators argue that, when an improper communication is discovered before trial and an ethical violation is found, the communication should be held inadmissible so to balance the scales and protect the sanctity of the attorney-client relationship as well as the integrity of the profession.[5] As to plaintiffs' "constituents" argument, Relators note Broussard is not a constituent, but an attorney who does not live in the town and who discussed the subject of the representation with a "represented party." Simply put, plaintiffs cannot, with impunity, place the inactions of the Town Council at issue and then approach a member thereof in an

---

[4] *See Jenkins v. Wal-Mart Stores, Inc.*, 956 F.Supp. 695 (W.D. La. 1997)(concluding plaintiff's counsel was not permitted under Rule 4.2 to effect *ex parte* contact with any current Wal-Mart employee); *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992)(prohibiting plaintiffs' counsel's *ex parte* contact with any Shell employees other than plaintiffs).

[5] *See State v. Gilliam*, 98-1320 (La.App. 4 Cir. 12/15/99), 748 So.2d 622, *writ denied*, 00-493 (La. 9/29/00), 769 So.2d 1215 (suppressing statement elicited from criminal defendant by investigator as taken in violation of Rule 4.2). *See Cf. Boutte v. Winn-Dixie La., Inc.,* 95-1123 (La.App. 3 Cir. 4/17/96), 674 So.2d 299 (held improper *ex parte* communication between plaintiffs' treating physicians and defense counsel); *Coutee v. Global Marine Drilling Co.*, 04-1293 (La.App. 3 Cir. 2/16/05), 895 So.2d 631, reversed on other grounds, 05-576 (La.2/22/06), 924 So.2d 112 (found abuse of discretion to allow testimony of plaintiff's treating physician who accepted documents from, engaged in telephone conversations with, and met with defense counsel).

effort to establish liability outside the presence and without consent of opposing counsel.

Relators also challenge the trial court's *sua sponte* ruling, prohibiting defense counsel from communicating with the Town Council, a client, which Relators submit contradicts La.Rules Prof.Conduct, Rule 1.4.[6] Moreover, it places defense counsel in an impossible position to defend any claims made against the Town Council as a lawyer employed or retained by an organization, like the Town Council herein, represents the organization acting through its duly authorized constituents, who would be the aldermen in this matter. Citing La.Rules Prof.Conduct, Rule 1.13(a).

We find that this writ presents an issue that has not been directly addressed by this court, specifically whether a protective order excluding the testimony of a witness is the proper measure to take against allegedly unethical conduct in a proceeding before the trial court. It raises the question of what evidentiary consequences, if any, are wrought by an attorney's disregard for the ethical rules

---

[6] La.Rules of Prof.Conduct, Rule 1.4 provides:
> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter;
> (4) promptly comply with reasonable requests for information; and
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
> (b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued.
> (c) A lawyer who provides any form of financial assistance to a client during the course of a representation shall, prior to providing such financial assistance, inform the client in writing of the terms and conditions under which such financial assistance is made, including but not limited to, repayment obligations, the imposition and rate of interest or other charges, and the scope and limitations imposed upon lawyers providing financial assistance as set forth in Rule 1.8(e).

prohibiting communication with represented persons. Likewise, it brings to the court's attention the very abuses Rule 4.2 was enacted to prevent and poses a penalty to further the goals our supreme court sought to achieve in its enactment.

While this court has been silent, the fourth circuit in *Gilliam* suppressed a criminal defendant's statement that was elicited by an investigator without defense counsel's consent in violation of Rule 4.2. Noting the lack of jurisprudence, the *Gilliam* court held:

> The dual purposes behind Rule 4.2 are to prevent disclosure of attorney/client communications, and to protect a party from "liability-creating statements" elicited by a skilled interrogator. *Jenkins v. Wal–Mart Stores, Inc.*, 956 F.Supp. 695 (W.D.La.1997). In a reported civil case, the court held that an attorney was prohibited from making any use of documents provided by an employee of the adverse corporate party. *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D.La.1992), *amended on reconsideration in part*, *and order amended*, 144 F.R.D. 73 (E.D.La.1992).
>
> We conclude that where there is an improper communication discovered or considered before it is used at trial, and a violation of the ethical rule is found, it should be held inadmissible. *Jenkins*, *supra*. Patterson, even if we believe that he went on his own, elicited the kind of liability-creating statement that Merritt kept in his file for further use for the benefit of Williams and to the detriment of Gilliam. The purpose underlying Rule 4.2 and its analogues is to protect the sanctity of the attorney-client relationship and by so doing, to safeguard the integrity of the profession and preserve public confidence in our system of justice.
>
> No court should condone what happened here. O.I.D.P. represented both Williams and Gilliam, at least until 11 July 1994. The very organization through its investigator and ultimately through its counsel, brought harm to a former client by using the statement which had been obtained by Merritt's agent without permission of the defendant's counsel. We do not wish to be considered as lending our approval to the practice, if indeed a practice exists, of interviewing accused represented persons in jail in the absence of counsel. The better, fairer and safer practice is to afford the defendant's attorney reasonable opportunity to be present. While we have found no cases on point, we hold that a case by case analytical approach is to be utilized by courts contemplating whether supervisory suppression is warranted.

*Gilliam*, 748 So.2d at 638.

The federal courts have also spoken on this issue, holding:

> Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes. Indeed, the "district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Musicus v. Westinghouse Electric Corp.*, 621 F.2d 742 (5th Cir.1980). "The role of the district court in enforcing the Rules [of Professional Conduct] is a limited one, however, **and unless an attorney's questionable conduct threatens to taint the litigation pending before the court, 'the business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here.' "** *MMR/Wallace Power & Industrial, Inc. v. Thames Assoc.*, 764 F.Supp. 712 (D.Conn.1991). *See also Dondi Properties Corp. v. Commerce Savings and Loan Assoc.*, 121 F.R.D. 284, 290 (N.D.Tex.1988).

Likewise, the treatise writers have addressed the evidentiary consequences for violations of Rule 4.2, explaining:

> A violation of the no-contact rule may have consequences beyond formal discipline. In a criminal case, a Louisiana appellate court stated, with Rule 4.2 in mind: "[W]here there is an improper communication discovered or considered before it is used at trial, and a violation of the ethical rule is found, it should be held inadmissible."
>
> A related issue surfaced in *In re Shell Oil Refinery*, a class action case against Shell in which a group of plaintiffs' lawyers, organized as a "Plaintiffs' Legal Committee," acquired confidential information about Shell through a Shell employee, outside the discovery process. Shell asked the court to order the plaintiffs' lawyers to reveal the identity of the employee, so that they could determine if there had been a violation of Rule 4.2. Shell also sought information about the documents that the employee had provided. The court was unable to determine, at that stage, whether there had been a violation of the rule, but said:
>
>> The receipt of Shell's documents was more than informal fact-gathering. The PLC [Plaintiffs' Legal Committee] has effectively circumvented the discovery process and prevented Shell from being able to argue against production. Had the PLC sought to obtain these documents through the discovery process, Shell would have had the opportunity to seek a protective order pursuant to the Federal Rules of Civil Procedure....
>>
>> The Court is concerned with preserving the integrity of this judicial proceeding. What matters is balancing the scales. That can be done by prohibiting the PLC from making any use of the documents, requiring

the PLC to identify and produce the documents to Shell, and prohibiting the PLC from any further ex parte contact with any Shell employees other than those who are plaintiffs in this suit. That Shell may learn the identity of the source once it reviews the documents and perhaps retaliate against the employee is not this Court's concern.

The court entered an order in accordance with those conclusions. The case is interesting, in part, because it shows a court taking steps to protect against some of the abuses that Rule 4.2 is intended to prevent, and the court took those steps without concluding that Rule 4.2 had been violated. If the court had found a Rule 4.2 violation, one suspects that it would have done the same things, while perhaps reporting the offending lawyers to disciplinary authorities.

FRANK L. MARAIST, N. GREGORY SMITH, JUDGE THOMAS F. DALEY (DECEASED), THOMAS C. GALLIGAN, JR., CATHERINE M. MARAIST, 21 LA.CIV. L. TREATISE, *Louisiana Lawyering* § 9.3 (June 2017 update) (footnotes omitted).

The exclusion or admissibility of evidence ultimately rests within the sound discretion of the trial court. As to the exclusion of Lacour's testimony, we find that Relators have not shown the abuse necessary to reverse the trial court's ruling, especially in the absence of any evidence that the judicial process has been or will be tainted. On this point, it is noteworthy that Relators stress the alleged inaction of the Town Council as giving rise to the liability in this matter, but in the petition, liability is based on Mayor Moore's unilateral action taken "without obtaining the recommendation or consent of Police Chief Eddie Washington or the action of the Board of Aldermen for the Town of Boyce." Therefore, it follows that it is not the Town Council's failure to act, but rather, Mayor Moore's action in its absence that gives rise to liability in this litigation.

We agree with the proposition of defense counsel that he has the right to communicate with his client, the Town Council. The inappropriate action of Plaintiff's counsel should not be a basis for placing any limit on the ability of

defense counsel to defend his client. We therefore hold that the trial court abused its discretion in limiting defense counsel's ability to communicate with his client.

Accordingly, the writ is granted to reverse the trial court's ruling prohibiting defense counsel from contact with his client, the Town Council. Otherwise, the application for supervisory writs is denied. The stay order issued by this court on June 26, 2017, is hereby recalled.

**<u>WRIT GRANTED IN PART AND MADE PEREMPTORY; WRIT DENIED IN PART. STAY RECALLED.</u>**

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**17-470**

**MARY FISHER, ET AL.**

**VERSUS**

**THE TOWN OF BOYCE, ET AL.**

**GREMILLION, J**., concurs in the result and assigns written reasons.

I agree with the majority's finding that the Relators have not shown that the trial court abused its vast discretion in not excluding Lacour as a witness, particularly since there was no evidence that the alleged improper contact in any way tainted or will taint the judicial process. The trial court excluded Lacour's affidavit. Lacour's testimony at trial is subject to cross-examination and the fear of artful lawyering suggesting or prompting "liability-creating statements" is not present here. I would further note that there has been no finding, nor would I find based on the evidence before us, that a Rule 4.2 violation has occurred. *Gilliam* supports a conclusion that an "improper communication" *and* a violation of a rule of ethics is necessary in order to find a statement is inadmissible at trial. The affidavit has been excluded; excluding the witness entirely from the trial is a far-reaching consequence exceeding the allegations of this particular case.